IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BARRY BATSON; DAVID DOUTHAT; WILLIAM LANGER GOKEY; WILLIAM LANGEY AND SUSAN FLICKINGER GOKEY FOUNDATION, INC.; QUENTIN KRAMER; CHARLES MORTIMER - MORTIMER IRA; MICHAEL SOLKOW; JAMES WILSON, TRUSTEE FOR THE JAMES D. WILSON TRUST; AND WORTHINGTON ENTERPRISES, INC., <br><br> *Plaintiffs,* <br><br> vs. <br><br> RIM SAN ANTONIO ACQUISITION, LLC; RIM INVESTMENT GROUP LLC; BIGHORN CAPITAL, INC.; ROBERT ENTLER; SCOTT MORGAN; AND SICHENZIA ROSS FRIEDMAN FERENCE LLP, <br><br> *Defendants.* | Civil Action No._____ <br><br> JURY DEMANDED |

## COMPLAINT

Plaintiffs, Barry Batson, David Douthat, William Langer Gokey, William Langer and Susan Flickinger Gokey Foundation, Inc., Quentin Kramer; Charles Mortimer - Mortimer IRA, Michael Solkow, James Wilson, as Trustee for the James D. Wilson Trust, and Worthington Enterprises, Inc. (collectively "Plaintiffs"), complain of Defendants, RIM San Antonio Acquisition, LLC, RIM Investment Group LLC, Bighorn Capital, Inc., Robert Entler, Scott Morgan, and Sichenzia Ross Friedman Ference LLP (collectively "Defendants")[1], and would respectfully show the Court as follows:

---

[1] Defendants RIM San Antonio Acquisition, LLC, RIM Investment Group LLC, Bighorn Capital, Inc., Robert Entler, and Scott Morgan are referred to herein as the "RIM Group Defendants."

Page 1

## THE PARTIES

1. Plaintiff Barry Batson is an individual who resides in Waxhaw, North Carolina.

2. Plaintiff David Douthat is an individual who resides in Catonsville, Maryland.

3. Plaintiff William Langer Gokey is an individual who resides in Minot, North Dakota.

4. Plaintiff William Langer and Susan Flickinger Gokey Foundation, Inc. is a nonprofit foundation organized under the laws of North Dakota with its principal place of business in Minot, North Dakota.

5. Plaintiff Quentin Kramer is an individual who resides in Wichita Falls, Texas.

6. Plaintiff Charles Mortimer is an individual who resides in Tarentum, Pennsylvania.

7. Plaintiff Michael Solkow is an individual who resides in Fort Lauderdale, Florida.

8. Plaintiff James Wilson is an individual who resides in Austin, Texas. Mr. Wilson is Trustee for the James D. Wilson Trust.

9. Plaintiff Worthington Enterprises, Inc. is an corporation organized under the laws of the state of Illinois with its principal place of business in Kane County, Illinois

10. Defendant RIM San Antonio Acquisition, LLC ("RIM") is a Delaware Limited Liability Corporation with its principal place of business at 250 Pilot Road, Suite 160, Las Vegas, Nevada 80119. RIM may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington Delaware, 19808.

11. Defendant RIM Investment Group LLC ("RIM Investment Group") is a Delaware Limited Liability Corporation with its principal place of business at 250 Pilot Road, Suite 160, Las Vegas, Nevada 80119. RIM Investment Group may be served with process by serving its

registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington Delaware 19808.

12. Defendant Bighorn Capital, Inc. ("Bighorn") is a Nevada Corporation with its principal place of business at 250 Pilot Road, Suite 160, Las Vegas, Nevada 80119. Bighorn may be served with serving its registered agent, Laughlin Associates, Inc., 9120 Double Diamond Parkway, Reno, Nevada 89521.

13. Defendant Robert R. Entler ("Entler") is an individual who resides in Nevada, and serves as President and Director of Bighorn. Entler may be served with process at 250 Pilot Road, Suite 160, Las Vegas, Nevada 80119 or wherever he may be found.

14. Defendant Scott Morgan ("Morgan") is an individual who resides in Illinois and may be served with process at 3030 N Southport Ave., Chicago, Cook County, Illinois 60657 or wherever he may be found.

15. Defendant Sichenzia Ross Friedman Ference LLP ("SRFF") is a New York Limited Liability Partnership with its central office located at 61 Broadway, 32nd Floor, New York, New York 10006. SRFF may be served with process by serving its registered agent, Richard A. Friedman, 61 Broadway, 32nd Floor, New York, New York 10006.

**JURISDICTION AND VENUE**

16. This action arises under Sections 10(b), 18, and 20 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332, and under Section 27 of the Exchange Act, 15 U.S.C. § 78aa. This action arises under the laws of the United States and involves federal questions. This Court further has jurisdiction of the related state law claims which arise from the

same operative facts. This Court has personal jurisdiction over the Defendants to this action because each of them performed acts that constitute doing business in Texas by, among other conduct, contracting with a Texas resident and either party was to perform the contract in whole or in part in Texas, and committing a tort in whole or part in Texas. Thus, Defendants are subject to Texas long-arm jurisdiction under § 17.042, TEX. CIV. PRAC. & REM. CODE.

17. Venue is appropriate in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Western District of Texas, and the real property that is the subject of this action is located within the Western District of Texas.

## BACKGROUND

### Factual Background

**A.   *The RIM San Antonio Acquisition LLC Offering Memorandum***

18. In April 2013, RIM San Antonio Acquisition LLC ("RSA") issued an Offering Memorandum outlining the private offer and sale of promissory notes in connection with a proposed real estate transaction based in San Antonio, Texas.

19. The Offering Memorandum that RSA prepared and circulated to prospective investors described a real estate development transaction featuring a joint venture that would purchase a 5.1-acre tract in northwest San Antonio (the "Property") and construct a 280-unit apartment complex on the site.

20. The Offering Memorandum described the project as follows:

> **The RIM is a planned 280-unit Class "A" urban apartment community located on Talavera Blvd at the development called the Rim in northwest San Antonio, Texas. The developer plans four and five story mid-rise apartment buildings with units wrapping the parking garage, making parking direct access to the units. The unit sizes will range from 600-1,375 square feet with one, two, and three bedroom units available. The development's amenities include a fitness center, a theater room, a business center, an entertainment lounge, and a resort-style pool.**

21. The joint venture was described as a development arrangement between RSA, Bill Gunn (a central-Texas real estate developer based out of Austin), and Bryan Dorsey (described in the Offering Memorandum as having 25 years of "experience in all facets of real estate acquisition, financing and development").

22. Bighorn was identified in the Offering Memorandum as the "Financier/Facilitator" who, along with Entler, would facilitate the development of the Property and provide related financing. Morgan was identified in the Offering Memorandum as a "Managing Member" of RIM, and someone with an extensive real estate development investment experience.

### B. The Note Terms

23. Under the Offering Memorandum, 10% Promissory Notes (the "Notes") maturing in 180 days would be sold to qualified investors. The Notes would only issue upon the purchase of at least $1,500,000 in Notes, which was described as the "Minimum Offering." The maximum offering was set at $8,500,000.

24. Under the Offering Memorandum, once the $1,500,000 threshold was met, the Notes would issue and RIM would pledge the Property and all other assets as security for repayment of the Notes.

25. The Notes would mature 180 days after issuance, at which time full repayment was due. If the Notes were repaid within 90 days of issuance, interest would accrue at ten percent (10%) per annum. If the Notes were not repaid in 90 days, the interest rate would increase to twelve and one-half percent (12.5%) per annum.

26. As part of the Offering Memorandum, RIM included an Escrow Agreement that outlined the terms and conditions of SRFF's role as escrow agent for the offering. Under the

783663v.2 57223-1

Escrow Agreement, SRFF would act as the escrow agent for all funds received for the purchase of Notes, and SRFF would further release and transmit such funds in accordance with the Offering Memorandum upon, among other things, receipt of funds of at least $1,500,000 for the purchase of Notes.

C.   *The Notes Issue and RIM Defaults*

27.   Although the minimum $1,500,000 threshold was never reached and SRFF never confirmed that $1,500,000 had been deposited for the purchase of Notes, SRFF nevertheless transmitted approximately one million dollars to an account maintained by RIM Investment Group. Subsequently, the Notes were issued in May and June of 2013.

28.   None of the invested funds were ever used to purchase or develop the Property. In fact, unbeknownst to the Plaintiff investors, the Offering Memorandum was issued after RIM had failed to close on the sale of the Property on at least two scheduled closing dates (March 4, 2013 and March 7, 2013). Moreover, the 45-day offering period continued after the option to purchase the Property had expired on May 15, 2013.

29.   That the RIM Group Defendants never intended to use the proceeds from the Notes to acquire the Property is confirmed by the fact that the RIM Group Defendants never transmitted any funds to the title company where the closing was to take place and failed to take any steps to purchase the Property or move forward with the joint venture.

30.   Instead, the RIM Group Defendants allowed the purchase option to lapse and refused to tender any sum to revive the option. In fact, on May 28, 2013, after the option period had expired and the RIM Group Defendants failed to deposit any money with the title company responsible for closing the sale of the Property, William Gunn notified the RIM Group Defendants that Gunn had negotiated an extension of the purchase option.

31. To secure the extension Gunn requested the immediate deposit of $100,000. Of that amount, $50,000 would be paid as consideration to the seller for the extension of the option period and $50,000 would be deposited with the title company to be applied to the purchase price at closing. Although SRFF had released well over $500,000 to the RIM Group Defendants as of May 28, 2013, the RIM Group Defendants refused to tender any sum to revive the purchase option and did not account for any of the amounts received in connection with the sale of the Notes. Moreover, RIM failed to pledge any assets or property as security.

32. While the Notes were being offered, the RIM Group Defendants knew that they did not have sufficient financing in place to purchase or develop the Property and had no intent to move forward with development efforts. Nevertheless, RIM, Entler, and Morgan continued to work to capture additional investment dollars and secure the release of funds placed in escrow with SRFF even after the purchase option for the Property expired.

33. In making the decision to invest in the Notes, Plaintiffs relied on the representations set forth in the Offering Memorandum and believed that RIM intended to acquire and develop the Property as described in the Offering Memorandum.

## CAUSES OF ACTION

### VIOLATIONS OF SECTION 10(B) OF THE ACT

34. Plaintiffs incorporate by reference and re-allege the facts and allegations as set forth above.

35. The RIM Group Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

36. The RIM Group Defendants, singularly and in concert, engaged in a plan, scheme, and unlawful conspiracy and course of conduct, pursuant to which they knowingly and/or recklessly engaged in acts, transactions, and courses of business which operated as a fraud on

Plaintiffs. Defendants made various untrue statements of material facts and omitted material facts thus misleading Plaintiffs in order to induce them to invest in and purchase the Notes.

37. Plaintiffs relied on the Offering Memorandum and the untrue facts regarding the RIM Group Defendants' plans to develop the Property and participate in the joint venture described in the Offering Memorandum. Had Plaintiffs known of the materially adverse information they would not have purchased the Notes.

## FRAUD

38. Plaintiffs incorporate by reference and re-allege the facts and allegations as set forth above.

39. The RIM Group Defendants are liable to Plaintiffs for common law fraud. The RIM Group Defendants engaged in fraud by employing devices, schemes, and conspiracies to defraud Plaintiffs by making untrue statements of material facts or omitting to state material facts necessary to make the statements made in light of the circumstances under which they were made, not misleading.

40. Without knowledge of the false and misleading nature of the RIM Group Defendants' various representations and omissions, Plaintiffs relied, to their detriment, on the RIM Group Defendants' representations regarding: their development plans; their ability to secure financing; their intent to close on the sale of the Property; and the use of any invested sums. Plaintiffs suffered substantial harm as a result of their reliance on the RIM Group Defendants' fraudulent and false statements. Accordingly, Plaintiffs are entitled to recover out-of-pocket damages to reimburse them for the amounts paid for the Notes, as well as exemplary damages.

## BREACH OF CONTRACT

41. Plaintiffs incorporate by reference and re-allege the facts and allegations as set forth above.

42. RIM is liable to Plaintiffs for breach of contract. The Notes matured 180 days after issuance, and RIM promised to repay all sums due and owing at or before maturity along with 10% or 12.5% interest.

43. Following maturity, Plaintiffs made demand on RIM for payment of all sums due under the Notes. Despite such demand, RIM has failed and refused to tender payment and is in breach of the Notes. All conditions precedent to Plaintiffs' recovery in full for breach of contract have occurred, been waived, or have been performed.

44. Plaintiffs are entitled to recover the sums due and owing from RIM under the Notes, along with interest at the rate of 12.5% per annum. Plaintiffs have retained Winstead PC to prosecute their claim for breach of contract and have agreed to pay Winstead PC reasonable and customary attorney's fees incurred in the prosecution of this action. Accordingly, Plaintiffs seek a recovery of reasonable and necessary attorney's fees.

## MONEY HAD AND RECEIVED/ASSUMPSIT

45. Plaintiffs incorporate by reference and re-allege the facts and allegations as set forth above.

46. Plaintiffs sue RIM and RIM Investment Group for money had and received. RIM and RIM Investment Group hold money that belongs to Plaintiffs in equity and good conscience. Plaintiffs have made demand for the return of such money; however, RIM and RIM Investment Group continue to wrongfully withhold and retain all sums paid by Plaintiffs to purchase the Notes under the Offering Memorandum. Accordingly, Plaintiffs sue RIM and RIM

Investment Group for money had and received and assumpsit to recover all sums improperly received and retained by RIM and RIM Investment Group.

## BREACH OF ESCROW AGREEMENT

47. Plaintiffs incorporate by reference and re-allege the facts and allegations as set forth above.

48. Plaintiffs sue SRFF for breach of the Escrow Agreement. In the Offering Memorandum, RIM included an Escrow Agreement that outlined the terms and conditions of SRFF's role as escrow agent for the offering.

49. Under the Escrow Agreement, SRFF would act as the escrow agent for all funds received for the purchase of Notes, and SRFF would further release and transmit such funds in accordance with the Offering Memorandum upon, among other things, confirmation of receipt of funds of at least $1,500,000 for the purchase of Notes.

50. The minimum $1,500,000 threshold was never satisfied and SRFF never received confirmation that $1,500,000 had been deposited for the purchase of the Notes. SRFF nevertheless improperly transmitted approximately one million dollars to an account maintained by RIM Investment Group without authorization from Plaintiffs and without confirming that the Minimum Offering threshold had been met. Subsequently, the Notes were issued in May and June of 2013 and the funds were retained even though the minimum investment amount was never deposited with SRFF.

51. SRFF's release of funds from escrow therefore constituted a breach of the Escrow Agreement.

## JURY TRIAL DEMANDED

52. Plaintiffs demand a jury trial pursuant to FED. R. CIV. P. 38(b).

## CONCLUSION AND PRAYER

As a result of Defendants' wrongful conduct, Plaintiffs suffered substantial harm and are entitled to actual damages. Plaintiffs are also entitled to exemplary damages, reasonable and necessary attorney's fees, and costs of court. Plaintiffs are entitled to pre-judgment and post-judgment interest as provided for under the Notes and by law.

Plaintiffs respectfully pray that summons issue to each Defendant to appear and answer herein, and that upon final trial, that Plaintiffs be award from Defendants: (1) actual and exemplary damages; (2) pre-judgment interest on all sums awarded as provided by law; (3) reasonable attorneys' fees; (4) costs of court and other recoverable expenses; (5) post-judgment interest as provided by law; and (6) such other and further relief to which they may be justly entitled.

Respectfully submitted,

**WINSTEAD PC**
401 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 370-2800
(512) 370-2850 (Fax)
jruiz@winstead.com
avaldes@winstead.com

By: /s/ James G. Ruiz
James G. Ruiz
State Bar No. 17385860
Alex S. Valdes
State Bar No. 24037626

**ATTORNEYS FOR PLAINTIFFS**

783663v.2 57223-1